IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 22-02691 (ESL) |
| ANA LUISA TOLEDO DAVILA | CHAPTER 7 |
| Debtor | |
| ANA LUISA TOLEDO DAVILA | ADV. PROC. NO. 23-00050 (ESL) |
| Plaintiff | |
| vs. | |
| PLANET HOME LENDING, LLC, *et al.* | |
| Defendant | |

OPINION AND ORDER

This adversary proceeding is before the court upon the joint *Motion [] (1) to Dismiss Complaint for Lack of Subject Matter Jurisdiction or (2) to Abstain* and the *Memorandum in Support []* thereof filed by Luna Residential II LLC ("Luna Residential") and Planet Home Lending, LLC ("Planet", and collectively with Luna Residential, "PHL") ("*PHL's Motion to Dismiss*", dkt. #49 and #49-1), the *Motion for Dismissal, and Memorandum of Law in Support* filed by Matilde del Rosario Toledo Davila's ("Matilde Toledo") ("*Matilde Toledo's Motion to Dismiss*", dkt. #50), and Debtor/Plaintiff's responses thereto (dkt. #57, 60).

For the reasons discussed below, *PHL's Motion to Dismiss* is GRANTED, and the *Complaint* is dismissed for lack of subject-matter jurisdiction.

-1-

Procedural Background

A.  Background of Lead Bankr. Case No. 22-02691

1.  Debtor/Plaintiff filed a Chapter 7 bankruptcy petition on September 9, 2022 (Lead Case No. 22-02691, dkt. #1).[1] Debtor/Plaintiff disclosed in her schedules, the residential property at issue in this adversary proceeding located at 202 Calle Sol, San Juan, PR 00901 (the "Property") as having a value of $1,995,000.00 (*Schedule A/B: Property*, Lead Case No. 22-02691, dkt. #6 and as last amended at dkt. #119), and identified PHL as having a contingent, unliquidated, and disputed secured claim against the Property (*Schedule D: Creditors Who Have Claims Secured by Property*, Lead Case No. 22-02691, dkt. #8 and as last amended at dkt. #110).

2.  Additionally, Debtor/Plaintiff claimed a state exemption under the Homestead Right and Family Home Protection Act of 2011, 31 P.R.L.A. §1858, disclosing the Property as her homestead (*Amended Schedule C*, Lead Case No. 22-02691, dkt. #71). The Chapter 7 Trustee ("Trustee") filed an opposition to Debtor/Plaintiff's homestead exemption (Lead Case No. 22-02691, dkt. #125), that was resolved via a *Stipulation for Settlement Agreement Between Debtor and Chapter 7 Trustee []* (the "*Stipulation*", Lead Case No. 22-02691, dkt. #138), that provides that, "[u]pon the entry on an Order authorizing [the Stipulation] and [p]ursuant to 11 U.S.C. §554, the [Property] will be deemed abandoned" (Lead Case No. 22-02691, dkt. #138, p. 3). The court issued an *Order Approving Settlement/Stipulation* on April 17, 2023 (Lead Case No. 22-02691, dkt. #146).

3.  On April 18, 2023, in accordance with the *Stipulation*, the Trustee filed a *Notice of Abandonment of Property and Request for Clerk to Notice* (the "*Notice of Abandonment*", dkt. #147) abandoning the Property pursuant to 11 U.S.C. §554 (id., p. 1, Asset No. 1). The *Notice of Abandonment* reads, in pertinent part, as follows:

> Reason For Abandonment: Per Stipulation Dkt. No. 138, all scheduled litigation and causes of actions are deemed abandoned. Dkt. No. 146 Order approving

---

[1] On November 17, 2022, the Debtor/Plaintiff moved for conversion of the case to a Chapter 13, which was later withdrawn (dkt. #138, p. 2, ¶3, and p. 3, ¶8(d)).

stipulation. Additional property listed and abandoned herein as they are burdensome to the Estate or the cost of administration outweighs its value.

(1) In considering that abandonment of property of the Estate is governed by section 554, the undersigned Trustee has determined, after a proper inquiry, that the above listed property is not proper for administration, and/or is burdensome to this Estate or of inconsequential value to the Estate.

Id., p. 5. See also, *Individual Estate Property Record and Report*, dkt. #150 (Property is disclosed as "OA", abandoned).

B.      Background of Adv. Proc. No. 23-00050

4.      On July 6, 2023, that is, after the *Notice of Abandonment*, Debtor/Plaintiff filed the instant adversary proceeding against Luna Residential, Planet, Matilde Toledo, and other co-defendants (dkt. #1). In the *Complaint*, Debtor/Plaintiff requests a declaratory judgment to the effect that she owns the Property free and clear of liens, claims and encumbrances other than property taxes (id. at ¶15). She avers that on or around October 1998, Doral Bank extended a credit facility to the Debtor/Plaintiff with her parents as co-debtors (the "Loan") (id. at ¶16); that the Loan is secured by, *inter alia*, a first mortgage deed and promissory note (the "Note") payable to Doral Bank (id. at ¶17); that, in April 2014, Banco Santander de Puerto Rico ("Banco Santander") notified Debtor/Plaintiff that it was the servicer for the loan (id. at ¶22); that, in a foreclosure suit filed by Doral Bank against Debtor/Plaintiff in the Puerto Rico Court of First Instance (the "State Court"), Case No. KCD 2009-0268 (the "First State Court Case"), the State Court found that Banco Santander was unable to prove that it was the holder the Note in accordance with the requirements of the Negotiable Instruments Act, 19 P.R.L.A. §401 *et seq.*, and consequently did not authorize the disbursement of certain consigned funds to Banco Santander (id. at ¶30). That, subsequently, Banco Santander filed a collection of money and foreclosure complaint in the State Court against Debtor/Plaintiff, Case No. SJ-2019cv4102, alleging that it was the good faith holder of the Note (the "Second State Court Case") (id. at ¶31); and that Banco Santander's allegations are barred by *res judicata* because the First State Court Case allegedly determined that Banco Santander was not the good faith holder of the Note (id. at ¶31). That, on or around July 2021, Banco Santander and Luna Residential filed a motion in the

Second State Court Case requesting that Banco Santander be substituted by Luna Residential, who purchased the Note from Banco Santander (id. at ¶32), and the State Court authorized the substitution (id. at ¶32). That Debtor/Plaintiff filed a motion in the Second State Court Case requesting to exercise her right of redemption of litigious credit, arguing that Luna Residential did not have a claim as to the Property because of the prior determination by the State Court and, thus, any subsequent assignment or transfer of the Note is null (id. at ¶33). That the State Court in the Second State Court Case denied Debtor/Plaintiff's motion and found that the ruling in the First State Court Case was not *res judicata* and did not bind the court in the Second State Court Case (id. at ¶¶33-34). Notwithstanding, Debtor/Plaintiff argues that Banco Santander did not have the ability to transfer the Note and, thus, Luna Residential never became the legitimate, good-faith transferee of the Note, and cannot be a creditor with a secured claim over the Property. The filing of Debtor/Plaintiff's Chapter 7 petition stayed the Second State Court Case (id. at ¶¶34-37).

5. On August 30, 2023, PHL filed *PHL's Motion to Dismiss* (dkt. #49 and #49-1), requesting dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, that the court abstaining from hearing the *Complaint* on account of the proceedings pending before the State Court in the Second State Court Case. PHL argues that the Property is no longer property of the bankruptcy estate because it was abandoned by the Trustee, that the matters at issue in this adversary proceeding are not related to the lead bankruptcy case and are instead premised on state law, that there is no nexus between the relief sought in the *Complaint* and the administration of the bankruptcy estate, and that the issues between the parties can be timely adjudicated in the State Court Case. PHL argues that this adversary proceeding it is not a core proceeding and/or that mandatory abstention is required and/or discretionary abstention is appropriate.

6. On September 1, 2023, Matilde Toledo filed *Matilde Toledo's Motion to Dismiss* (dkt. #50), requesting that the *Complaint* be dismissed under Fed. R. Civ. P. 12(b)(6) because it fails to state a cognizable claim against her. Matilde Toledo argues that this court should abstain from considering the *Complaint* as there is a pending State Court case addressing the issues raised

in the *Complaint* that was commenced before the filing of the Chapter 7 Petition. Further, Matilde Toledo argues that the only allegation referring to her in the *Complaint* is found in Paragraph 9 and is limited to stating that she is Debtor's sister and part of the hereditary estate of Debtor's parents (see, dkt. #1, ¶9). Thus, Matilde Toledo argues that the *Complaint* has insufficient factual data to state a claim against her.

7. On September 22, 2023, Debtor/Plaintiff filed her response to *PHL's Motion to Dismiss* (dkt. #57), averring that this court has jurisdiction under 28 U.S.C. §§157 and 1334, and that this is a core proceeding under 28 U.S.C. §157(b)(2)(K) on determinations of the validity, extent, or priority of liens. Further, Debtor/Plaintiff argues that this court has jurisdiction over the Property pursuant to 28 U.S.C. §1334(e)(1). Debtor/Plaintiff avers that she filed this adversary proceeding "to address mortgage issues related to her homestead that was involved in a foreclosure case in state court" (id. at p. 2). Debtor/Plaintiff also argues that whether PHL has a valid lien has a direct impact on the extent of the bankruptcy discharge, and that the abandonment by the Trustee of the Property does not deprive this court of jurisdiction because the Property still belongs to Debtor/Plaintiff.

8. On September 25, 2023, Debtor/Plaintiff filed her response to *Matilde Toledo's Motion to Dismiss* (dkt. #60) averring that this Adversary Proceeding is a core matter and, as such, mandatory abstention does not apply. Plaintiff further avers that Matilde Toledo "is included as defendant, only for notice purposes, as part of the hereditary estate of Debtor's parents" (id. at p. 2) and if Matilde Toledo were to "stipulate that she has no interest in [the Property], [Debtor/Plaintiff] would not oppose her dismissal as a party to [the] *Complaint*" (id. at pp. 2 and 16). As to the abstention argument, Debtor/Plaintiff argues that although there is a state court action pending that was stayed because of the filing of the Chapter 7 Petition (the Second State Court Case), key matters are involved as the claim exists now considering the bankruptcy filing and Debtor's claim of exemption over the Property.

9. On October 31, 2023, PHL filed a motion for leave to file a reply to Debtor/Plaintiff's response (dkt. #66), which was denied as untimely on November 2, 2023 (dkt. #69) after Debtor/Plaintiff filed an opposition thereto (dkt. #67).

10. On January 12, 2024, the Preliminary Pretrial scheduled for January 26, 2024, was continued without a date pending resolution of the motions to dismiss filed by PHL and Matilde Toledo (dkt. #84).

## Legal Issues

The issue before this court is whether the adversary proceeding is core or non-core matter over which it has jurisdiction.

## Position of the Parties

A. PHL's Position

PHL avers that the court lacks jurisdiction to grant relief requested by Debtor, namely, a determination that she owns the Property – which is no longer part of the bankruptcy estate and is subject to a homestead exemption – free and clear of liens, claims and encumbrances other than property taxes pursuant to Fed. R. Civ. P. 12(b)(1).

B. Debtor/Plaintiff's Position

Debtor/Plaintiff avers that this court has jurisdiction under 28 U.S.C. §§157 and 1334, and that this is a core proceeding under 28 U.S.C. §157(b)(2)(K) on determinations of the validity, extent, or priority of liens. Debtor/Plaintiff also argues that whether PHL has a valid lien has a direct impact on the extent of the bankruptcy discharge, and that the abandonment by the Trustee of the Property does not deprive this court of jurisdiction because the Property still belongs to Debtor/Plaintiff.

## Legal Analysis

*(A) Fed. R. Civ. P. 12(b)(1) Standard*

When faced with motions to dismiss under both Fed. R. Civ. P. 12(b)(1) and (b)(6), "a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." Ne. Erectors Ass'n of BTEA v. Sec'y of Lab., Occupational Safety & Health Admin., 62

F.3d 37, 39 (1st Cir. 1995), citing 5A Charles Wright & Arthur Miller, *Federal Practice and Procedure* §1350, at 210 (1990); Bell v. Hood, 327 U.S. 678, 682 (1945) ("Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy.").

Pursuant to Fed. R. Civ. P. 12(b)(1), applicable in bankruptcy adversary proceedings through Fed. R. Bankr. P. 7012, a party may request the dismissal of a complaint for "lack of subject matter jurisdiction." Fed. R. Bankr. P. 7012(b)(1). "In ruling on a motion to dismiss for lack of subject matter jurisdiction under [Fed. R. Civ. P. 12(b)(1)], the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff. In addition, the court may consider whatever evidence has been submitted...". In re Betteroads Asphalt, 2021 WL 5182431, *6 (Bankr. D.P.R. 2021), quoting Portland Pipe Line Corp., 164 F. Supp. 3d 157, 173-74 (D. Maine 2016). See also, Gonzalez v. U.S., 284 F. 3d 281, 288 (1st Cir. 2002).

*(B)    Jurisdiction of this Court: Core and Non-Core Matters*

The jurisdiction of bankruptcy courts is created and limited by statute. See, Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). "No matter how tantalizing a problem may be, a federal [] court cannot scratch intellectual itches unless it has jurisdiction to reach them." Director, OWCP v. Bath Iron Works Corp., 853 F.2d 11, 13 (1st Cir. 1988).

Bankruptcy courts have subject matter jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §1334(b). See also, 28 U.S.C. §157(b)(1). The statute distinguishes between cases "arising under", "arising in" and "related to" proceedings under Title 11. See, In re Abraham Petroleum Corp., 447 B.R. 412, 415 (Bankr. D.P.R. 2011). "'Arising under' proceedings are those cases in which the cause of action is created by title 11." Id., quoting In re Middlesex Power Equipment & Marine Inc., 292 F.3d 61, 68 (1st Cir. 2002). "'Arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." Id. (citation

omitted). "'Related to' proceedings are those which potentially have some effect on the bankruptcy estate, such as altering bankrupt's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankruptcy estate." Id. (citations omitted). In re Maldonado Perez, 2019 WL 5799327, *2 (Bankr. D.P.R. 2019) (citations omitted) ("A proceeding is related to bankruptcy if the outcome of that proceeding could conceivably have any effect on the bankruptcy estate.").

Core proceedings are those involving matters "arising under title 11" or "arising in a case under title 11" of the United States Code, that is, they would not exist outside of bankruptcy. In re Abraham Petroleum Corp., 447 B.R. at 415, quoting 1 Daniel R. Cowans, *Bankruptcy Law and Practice* §1.2 at 31 (1989). "A core proceeding, for bankruptcy jurisdictional purposes, is an action that has as its foundation the creation, recognition, or adjudication of rights that would not exist independent of a bankruptcy environment." In re Med. Educ. & Health Servs., Inc., 459 B.R. 527, 545 (Bankr. D.P.R. 2011) (citations and quotations omitted). Section 157 sets forth a non-exclusive list of core proceedings which include, among others, determinations of the validity, extent, or priority of liens. See, 28 U.S.C. §157(b)(2)(K).

A non-core proceeding has a "life of its own in either state or federal common law or statute independent of the federal bankruptcy laws." See, In re Roman-Perez, 527 B.R. 844, 851 (Bankr. D.P.R. 2015), quoting Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1582 (2nd Cir. 1983). See also, Scotland Guard Servs. v. Autoridad de Energia Electrica (In re Scotland Guard Servs., Inc.), 179 B.R. 764, 767 (Bankr. D.P.R. 1993) (non-core proceedings are those that "would survive outside of bankruptcy"). The United States Court of Appeals for the First Circuit has defined non-core proceedings as claims that did not arise in the core bankruptcy function of adjudicating debtor-creditor rights. In re Arnold Print Works v. Apkin, 815 F.2d 165, 167 (1st Cir. 1987). See also, In re Caribbean Petroleum Corp., 443 B.R. 560 (Bankr. D.P.R. 2010) (discussing the difference between core and non-core proceedings).

"It is the bankruptcy court's responsibility to determine whether each claim before it is core or non-core." Executive Benefits Ins. Agency v. Arkison, 573 U.S. 25, 33 (2014). "A

determination of whether a controversy is core or non-core depends upon its relation to the basic functions of the bankruptcy court and not on the federal or state basis for the claim." In re Abraham Petroleum Corp., 447 B.R. at 415, citing In re Arnold Print Works, Inc., 815 F.2d 165, 169 (1st Cir. 1987). "If the proceeding, by its nature, arises only within the bankruptcy context because it involves a right created by federal bankruptcy law, then it is a core proceeding." Id., citing In re Wood, 825 F.2d 90, 97 (5th Cir. 1987). "If an action would survive outside of bankruptcy, and in the absence of bankruptcy would have been initiated in a state or a district court, then it clearly involves a non-core matter." Id., (citation omitted). A proceeding which does not arise under Title 11 or does not arise in or is not related to a case under Title 11 is not appropriate for bankruptcy judicial determination. See, In re Maldonado Perez, 2019 WL 5799327 at *2.

A bankruptcy court may hear and finally determine all core bankruptcy proceedings without the parties' consent. See, 28 U.S.C. §157(b). In non-core "related to" proceedings, the U.S. Supreme Court has stated the following:

> "non-core" proceedings—i.e., proceedings that are 'not core' but are otherwise related to a case under title 11—[28 U.S.C. §157(c)] authorizes a bankruptcy court to hear the proceeding, and then submit proposed findings of fact and conclusions of law to the district court. The district court must then review those proposed findings and conclusions *de novo* and enter any final orders or judgments. There is one statutory exception to this rule: if all parties 'consent', the statute permits the bankruptcy judge to hear and determine and to enter appropriate orders and judgments as if the proceeding were core.

Arkison, 573 U.S. at 34. In the instant case, Debtor/Plaintiff, Luna Residential and Planet have consented to the entry of a final order by the bankruptcy judge with respect to the pending motions to dismiss.[2] Codefendant Matilde Toledo did not include language to the effect of whether she consents to the entry of a final order by this court in this Adversary Proceeding. Notably, 28 U.S.C. §157(c)(2) requires the consent of "all the parties to the proceeding" for the referral of a

---

[2] PHL consent "to the entry of a final order by this Court solely with respect to this motion if it is determined that, absent consent, this Court cannot enter final orders or judgments consistent with Article III of the United States Constitution" (dkt. #49, p. 2, ¶2).

proceeding related to a case under Title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments. This requirement is not met in the present case.

*(C)    Property of the Bankruptcy Estate, Abandonment by the Trustee, and Jurisdiction over Abandoned Property*

Section 541(a) of the Bankruptcy Code defines the property that comprises the bankruptcy estate. Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). This provision is broad and encompasses all rights and interests of the debtor in real property. See, Alan N. Resnick & Henry J. Sommer, 5 *Collier on Bankruptcy* ¶541.04 (16th ed. 2024). "Even though section 541 provides the framework for determining the scope of the debtor's estate and what property will be included in the estate, it does not provide any rules for determining whether the debtor has an interest in property in the first place. That gap is filled most of the time by nonbankruptcy law. The Supreme Court has stated that 'Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law… Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.'" 5 *Collier on Bankruptcy* ¶541.03 (16th ed. 2024), citing Butner v. United States, 440 U.S. 48, 54-55 (1979). Thus, property rights in bankruptcy are created, defined, and determined by state law. See, Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co., 549 U.S. 443, 451 (2007), quoting Butner v. United States, 440 U.S. 48, 55 (1979).

The Bankruptcy Code provides that "the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. §554. Furthermore, LBR 6007-1 states that "[t]he abandonment will be considered uncontested if no objection to a notice of intent to abandon is filed within fourteen (14) days of the mailing of the notice of abandonment." PR LBR 6007-1. Upon abandonment, "property [is removed] from the bankruptcy estate and [property is returned] to the debtor as though no bankruptcy occurred." In re Melendez, 2015 WL 7820980, *3 (Bankr. D.P.R. 2015), quoting In

re Pilz Compact Disc, Inc., 229 B.R. 630, 638 (Bankr. E.D.Pa. 1999). For this reason, upon abandonment under Section 554, the trustee is divested of control over the property. Thus, abandonment constitutes a divesture of all of the estate's interests in the property. 5 *Collier on Bankruptcy* ¶554.02 (16th ed. 2024). Usually, abandonment of property will end the court's jurisdiction to determine disputes concerning that property, unless the result of the dispute could have some effect on the bankruptcy case. See, 5 *Collier on Bankruptcy* ¶554.02 (16th ed. 2024), citing In re Xonics, Inc., 813 F.2d 127 (7th Cir. 1987); United States v. Fleet Nat'l Bank (In re Calore Express Co., Inc.), 288 B.R. 167, 169-70 (D. Mass. 2002) ("… if a given dispute is unrelated to a bankruptcy estate, a bankruptcy court ... has no subject-matter jurisdiction over that dispute.").

Jurisdiction is lost once the property is no longer property of the estate. See, 1 *Collier on Bankruptcy* ¶3.01[4] (16th ed. 2024), citing Wilton Armetale, Inc. v. Gordon Bros. Commer. & Indus., LLC (In re Wilton Armedale, Inc.), 2019 Bankr. LEXIS 787 (Bankr. E.D. Pa. 2019) (suit based on cause of action that had been abandoned by the trustee); Ostroff v. American Home Mortgage (In re Ostroff), 433 B.R. 442 (Bankr. D.D.C. 2010) (no jurisdiction to determine validity of lien on exempt property in Chapter 7 case). See also, In re Travers, 507 B.R. 62, 71 (Bankr. D.R.I. 2014) (citations omitted) ("jurisdiction is 'temporal ; while the bankruptcy court may have exclusive jurisdiction over property as of the commencement of a debtor's case, the bankruptcy court's jurisdiction over such property ends when it is no longer property of the estate."). In this regard, courts have found that examples of litigation not within the bankruptcy jurisdiction of the district courts include litigation of liens or other interests on property that are no longer property of the bankruptcy estate. See, 1 *Collier on Bankruptcy* ¶3.01[3][e][v] (16th ed. 2024), citing Torkelsen v. Maggio (In re The Guild and Gallery Plus, Inc.), 72 F.3d 1171 (3d Cir. 1996); Gardner v. United States (In re Gardner), 913 F.2d 1515 (10th Cir. 1990); In re Ostroff, 433 B.R. 442.

-11-

Discussion

The issues raised in the *Complaint* do not "arise under", "arise in" or "relate to" a proceeding under Title 11. In accordance with the court approved *Stipulation* (Lead Case No. 22-02691, dkt. #138 and #146), the Trustee filed a *Notice of Abandonment* (Lead Case No. 22-02691, dkt. #147) abandoning the Property object of the *Complaint* pursuant to 11 U.S.C. §554 (id., p. 1, Asset No. 1), which went unopposed. The Property is no longer part of the bankruptcy estate.

As previously discussed, core proceedings are those involving matters that would not exist outside of bankruptcy. The issues raised in the adversary proceeding are based wholly on non-bankruptcy law as they are strictly governed by Puerto Rico law; they do not depend on the bankruptcy case for their existence and can be properly and timely addressed in the Second State Court Case, which predates Debtor's Chapter 7 Petition.[3] A determination on whether Debtor/Plaintiff owns the Property free and clear will not affect the bankruptcy estate or its administration and will solely benefit the Debtor/Plaintiff. Litigation that would not have an impact on the administration of the bankruptcy case, or on property of the estate, or on the distribution to creditors cannot find a home in the district court based on the court's bankruptcy jurisdiction. See, e.g., 1 *Collier on Bankruptcy* ¶3.01[3][e][v] (16th ed. 2024), citing Northen v. MDC Innovations, LLC (In re C&M Invs. of High Point, Inc.), 2018 Bankr. LEXIS 2497 (Bankr. M.D.N.C. 2018); AY McDonald Indus. v. McDonald (In re McDonald), 590 B.R. 506 (B.A.P. 8th Cir 2018). "In the absence of any tangible effect on the bankruptcy case, bankruptcy courts have regularly concluded that they lack jurisdiction to resolve claims." In re Maldonado Perez, 2019 WL 5799327 at *2, quoting In re Boston Reg'l, 410 F.3d 100, 105 (1st Cir. 2005).

This court thus finds that it lacks subject-matter jurisdiction over the adversary proceeding which does not involve estate property and which can have no conceivable effect on the administration of this bankruptcy estate. This dispute is neither a "core" nor "non-core" matter

---

[3] The fact that the Second State Court Case predates the filing of the Chapter 7 Petition, addresses the same controversy, and is not dependent on the bankruptcy case weighs in favor of the finding that this Court lacks jurisdiction to address the Complaint. This Court has found that "[i]f an action survive[s] outside of bankruptcy, and in the absence of bankruptcy would have been initiated in a state or district court, then it clearly involves non-core matter." Mec Steel Bldgs., Inc. v. San Lorenzo Construction, 136 B.R. 606, 609 (Bankr.D.P.R.1992).

"related to" a bankruptcy proceeding, and the facts in this case do not warrant the court's use of its equitable powers pursuant to 11 U.S.C. §105(a).

Having found that it lacks subject-matter jurisdiction, this court declines to address issues of mandatory or permissive abstention, or whether Debtor/Plaintiff pleads a plausible claim for relief under Fed. R. Civ. P. 12(b).

Conclusion

For the reasons stated herein, *PHL's Motion to Dismiss* (dkt. #49) is hereby GRANTED, and the *Complaint* is dismissed for lack of subject-matter jurisdiction. *Matilde Toledo's Motion to Dismiss* (dkt. #50) need not be addressed.

Judgment will be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 12th day of April 2024.

Enrique S. Lamoutte
United States Bankruptcy Judge

-13-